IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

ALICE DIEHL-GREER                                                                    PLAINTIFF

vs.                                          Civil No. 05-1063

JO ANNE B. BARNHART,
Commissioner, Social Security Administration                                         DEFENDANT

## MEMORANDUM OPINION

### Factual and Procedural Background:

Alice Diehl-Greer (hereinafter "Plaintiff"), has appealed the final decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner"), denying her claim for claims for a period of disability and disability insurance benefits (hereinafter "DIB"), pursuant to *§§ 216(i) and 223* of Title II of the Social Security Act (hereinafter "the Act"), *42 U.S.C. §§ 416(i) and 423*. In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *42 U.S.C. § 405(g)*.

Each party has filed an appeal brief (Doc. #6 & 7). The history of the administrative proceedings is contained in the respective appeal briefs and will not be recited herein, except as is necessary.

The DIB application now before the undersigned was filed on August 25, 2000 and alleged an onset date of November 24, 1999 (T. 49-51). The relevant time period for Plaintiff's claim for DIB benefits begins with the alleged onset date, November 24, 1999, and ends with Plaintiff's date last insured for DIB benefits, December 31, 2002 (T. 49, 18, 201).

Plaintiff alleges that she is disabled due to: multilevel lumbar degenerative disc disease, with marked degeneration at L4-5; clear HIZ in the posterior aspect at L4-5; central herniated nucleus pulposis at L5-S1; narrowing of the disc interspace at L4-5; decreased signal intensity at L4-5; anterior disc bulge at L2-3; minimal diminished disc space at L2-3; fairly severe L4-5 facet disease with lateral recess narrowing bilaterally, greater right than left; probable abnormal diskogram radiographically at L4-5 with air along the ventral surface of the thecal sac; low back pain; right groin pain; diskogram results of L3-4 annular tear with low back pain 8 out of 10; diskogram results of L4-5 with 10 out of 10 concordant back pain with a degenerate nucleus and a posterior annual tear; diskogram results of L5-S1 9 out of 10 concordant low back pain with a degenerate nucleus and a posterior annular tear; mild omnidirectional disc bulging at L2-3 slightly indenting the thecal sac; mild spondylothesis at L4-5 with focal rupture of the posterior aspect of the annulus fibrosus; chronic low back pain, onset November of 1999 due to a fall from a deer stand and subsequent fall in Little Rock, Arkansas in September of 2001; muscle spasm; limited range of motion in the lumbar spine; hypothyroidism; history of open reduction and internal fixation surgery of the left forearm; insomnia; and, depression. The issue before this Court is whether the decision of the Commissioner is supported by substantial record evidence.

Plaintiff, whose date of birth is November 28, 1947, was 54 years of age at the time of the January 31, 2002, administrative hearing (T. 202, 199). Plaintiff has a 12th grade high school education (T. 19, 67, 204). Plaintiff previously worked as a housekeeper, secretary and bookkeeper (T. 19, 62, 205-209).

The Social Security Administration denied plaintiff's application initially and on

AO72A
(Rev. 8/82)

reconsideration. She then requested and received a hearing before an Administrative Law Judge (hereinafter "ALJ"), which hearing was conducted on January 31, 2002 (T. 199-246). The ALJ rendered an unfavorable decision on March 19, 2002 (T. 15-19). Plaintiff then sought the review of the Appeals Council and provided a additional evidence for review by the Appeals Council (T. 4-7, 8, 10, 186-198). Although the appeals counsel considered the additional evidence submitted by Plaintiff, her request for review was denied by the Appeals Council on July 8, 2005 (T. 4-8), thus making the ALJ's decision the final decision of the Commissioner. Plaintiff now seeks judicial review of that decision (Doc. #1). The matter is before the undersigned by consent of the parties (Doc. #2).

**Applicable Law:**

Our role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000); see also Craig v. Apfel 212 F.3d 433, 435-436 (8th Cir. 2000).* Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion. *See Haggard v. Apfel, 175 F.3d 591, 594 (8th Cir. 1999).* In considering whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. *See Prosch, 201 F.3d at 1012.* We may not reverse the Commissioner's decision merely because substantial evidence exists in the record that would have supported a contrary outcome. *See id.*

However, the Court may not reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision. *Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).* Even if this Court might have weighed the evidence differently, the

AO72A
(Rev. 8/82)

decision of the ALJ may not be reversed if there is enough evidence in the record to support the decision. *Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992).* And, it is well settled that proof of a disabling impairment must be supported by at least some objective medical evidence. *Marolf v. Sullivan, 981 F.2d 976, 978 (8th Cir.1992*).

The Commissioner has established, by regulation, a five-step sequential evaluation for determining whether an individual is disabled.

The first step involves a determination of whether the claimant is involved in substantial gainful activity. *20 C.F.R. § 416.920(b).* If the claimant is so involved, benefits are denied; if not, the evaluation goes to the next step.

Step two involves a determination, based solely on the medical evidence, of whether claimant has a severe impairment or combination of impairments. *Id., § 416.920(c); see 20 C.F.R. § 416.926.* If not, benefits are denied; if so, the evaluation proceeds to the next step.

The third step involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id., § 416.920(d).* If so, benefits are awarded; if not, the evaluation continues.

Step four involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform past work. *Id., § 416.920(e).* If so, benefits are denied; if not, the evaluation continues.

The fifth step involves a determination of whether the claimant is able to perform other substantial and gainful work within the economy, given the claimant's age, education and work experience. *Id., § 404.920(f).* If so, benefits are denied; if not, benefits are awarded.

In addition, whenever adult claimants allege mental impairment, the application of a

AO72A
(Rev. 8/82)

special technique must be followed at each level of the administrative review process.  See *20 C.F.R. § 416.920a(a)*.

The Commissioner is then charged with rating the degree of functional limitation, and applying the technique to evaluate mental impairments. See *20 C.F.R. § 416.920a(d)*. Application of the technique must be documented by the Commissioner at the ALJ hearing and Appeals Council levels.  See *20 C.F.R. § 416.920a(e)*.

In cases involving the submission of supplemental evidence subsequent to the ALJ's decision, the record includes that evidence submitted after the hearing and considered by the Appeals Council.  See *Jenkins v. Apfel, 196 F.3d 922, 924 (8th Cir.1999) (citing Riley v. Shalala, 18 F.3d 619, 622 (8th Cir.1994))*.  Thus, in situations such as the present, this court's role is to determine whether the ALJ's decision "is supported by substantial evidence on the record as a whole, including the new evidence submitted after the ALJ's determination was made." *Riley v. Shalala, 18 F.3d at 622.*  In practice, this requires a decision as to how the ALJ would have weighed the new evidence had it existed at the initial hearing. *See id.*  As the United States Court of Appeals for the Eighth Circuit has often noted, "this [is] a peculiar task for a reviewing court." *Id.*  Critically, however, this court may not reverse the decision of the ALJ merely because substantial evidence may allow for a contrary decision. *See Woolf v. Shalala,* 3 *F.3d 1210, 1213 (8th Cir.1993)*.  This requires us to speculate on how the ALJ would have weighed the newly submitted evidence had it been available at the initial hearing. *Flynn v. Chater, 107 F.3d 617, 622 (8th Cir.1997)*.  Thus, we have endeavored to perform this function with respect to the newly submitted evidence. *Id.; Mackey v. Shalala, 47 F.3d 951, 953 (8th Cir. 1995)*.

AO72A
(Rev. 8/82)

**Discussion:**

An individual is "disabled" under the Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A)*. The burden of establishing a compensable disability under the Act is initially on the claimant. See *Kerns v. Apfel, 160 F.3d 464, 466 (8th Cir.1998); Riley v. Shalala, 18 F.3d at 621 (quoting Bowen v. Yuckert, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987))*. However, the submission of the additional evidence to the Appeals Council complicates this analysis; thus, this court now turns to that additional evidence.

The Appeals Council considered additional medical evidence from Plaintiff's treating orthopedic surgeon, Dr. Wayne L. Bruffett of the Arkansas Spine Center, before denying review (T. 8, 186-198). The administrative record before the undersigned contains medical records, not previously included in the administrative record (T. 4-8, 186-198). This additional evidence reveals information not provided to the administrative law judge. The additional evidence indicates that following a detailed discussion with Plaintiff as well as additional review of Plaintiff's MRI and Diskogram test results, Dr. Bruffett, an orthopedic surgeon, determined that Plaintiff could benefit from surgical intervention. Dr. Bruffett wrote:

> I reviewed the imaging studies with Ms. Diehl again and we had a long, detailed discussion about her condition. I've told her that most people with her imaging studies can be "managed" with a good exercise program and anti-inflammatory medications. However, certainly some people have much more pain than others.
>
> I told her that obviously if she could manage her symptoms without surgery she's probably better off. The only thing I could recommend to her surgically would

-6-

AO72A
(Rev. 8/82)

be a fusion to readicate the painful discs and stabilize the spine. I've told her that I really could not address all of these levels and I really don't think I would need to at L5-S1 because it looks entirely normal as does really L3-4. L4-5 looks like t[he] most troublesome problem with the facet disease noted on her CT scan and the degenerative spondylolisthesis. Because the main pain generator seems to be in the disc I think this does not have stenosis or disc herniation and I think it would be safer to avoid a lot of work in her spinal canal. This would also decrease the risks of injury to the dura and nerve roots, and epidural fibrosis. However, it would require an anterior and posterior fusion. I would perform complete diskectomy at L4-5 and interbody fusion with bone followed by a posteriorly instrumented fusion a few days later. She'd probably be in the hospital for about a week.

We discussed this operative plan in detail, including the risks and possible complications of surgery such as bleeding, infection, neurologic injury, dural injury, organ injury, and certainly persistent symptoms. She understands that I cannot cure all of her back pain, but the goal would be to improve it to the point where she would not require narcotic medication and would have a little better quality of life. She needs to have appropriate surgical goals.

(T. 196-197).

This information was not previously made available to or considered by the ALJ. In fact, at the time of the ALJ's decision, the record contained the following from Dr. Bruffett: May 31, 2000 - Plaintiff was placed on an exercise program; October 1, 2001 through October 18, 2001 - Plaintiff was prescribed and obtained twelve thirty minute physical therapy treatments; and, July 27, 2000 - Dr. Bruffett "would not recommend any surgical treatment for [Plaintiff's] back" (T. 112, 126, 183-184). The ALJ relied on the conservative nature of Plaintiff's treatment and the opinion of Dr. Bruffett in finding Plaintiff not disabled (T. 15-17).

Dr. Bruffett changed his recommendation from one of no surgical intervention to that of a surgical diskectomy fusion at L4-5 (T. 196-197). The additional evidence establishes that conservative treatment and management failed Plaintiff (T. 122, 195-198). The ALJ did not have the benefit of any of this information when he found that Plaintiff could perform her past

relevant work which was sedentary in nature. Clearly, such a change in the treating specialists findings could reasonably cause the ALJ to reach a different conclusion.

The undersigned is required to consider whether the knowledge of the additional evidence considered by the Appeals Council would impact the ALJ's decision. We find that the additional evidence would impact upon the ALJ's analysis. This evidence belies the ALJ's findings with respect to which of Plaintiff's physical impairments are severe. Specifically, the evidence of Dr. Bruffett's recommendation of lumbar diskectomy/fusion surgery would likely change the ALJ's findings with respect to Plaintiff's severe impairments. The ALJ's findings must be reconsidered in view of the additional record evidence[1].

In order to reach the same conclusion with respect to Plaintiff's severe impairments as noted in the decision, the ALJ would be forced to disregard Plaintiff's diagnoses and the recommendation of Plaintiff's treating specialist. The evidence of record before the undersigned does not contain substantial evidence to support such disregard of the additional objective medical evidence considered by the Appeals Council. Therefore, the ALJ should have an opportunity to consider the additional evidence considered by the Appeals Council.

**Conclusion:**

Accordingly, the decision of the ALJ, denying benefits to the plaintiff, is not supported by substantial evidence, and should be reversed. This is especially true in light of the additional evidence submitted to the Appeals Council, which was not before the ALJ when he

---

[1] The undersigned notes that Plaintiff alleges that benefits were ultimately awarded to Plaintiff, effective the day after the ALJ's decision now before the undersigned (Doc. #6, p. 3). However, this assertion was not considered in rendering this opinion because Plaintiff provided no documentary evidence in support of this assertion for the record.

AO72A
(Rev. 8/82)

rendered his decision.   This matter should be remanded to the Commissioner, for further consideration consistent with this opinion.

ENTERED this 22nd day of August, 2006.

                                                  /s/Bobby E. Shepherd
                                                  Honorable Bobby E. Shepherd
                                                  United States Magistrate Judge

AO72A
(Rev. 8/82)